IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PREVENTION, LLC, | |
| Plaintiff, | 8:15-CV-256 |
| vs. | |
| EQ BIOSCIENCES, INC., | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the defendant EQ Bioscience's motion to dismiss plaintiff's complaint for declaratory judgment or, in the alternative, transfer venue (filing 14). For the reasons discussed below, the Court will deny this motion.

BACKGROUND

The plaintiff has alleged and produced evidence of specific facts it contends support jurisdiction over the defendant in this case. The plaintiff, Prevention, LLC, is a Nebraska limited liability company. Filing 1 at 1; filing 23-1 at 1. Its owners and sole members are Eleanor G. Rogan and Ercole L. Cavalieri. Filing 23-1 at 1; filing 23-2 at 2. Both are faculty at the University of Nebraska Medical Center. Filing 1 at 2; filing 23-1 at 1; filing 23-2 at 1. Both are Nebraska residents, and were Nebraska residents at all relevant times. *See*, filing 22 at 2; filing 23-1 at 1; filing 23-2 at 1. The plaintiff owns a patent that covers, in part, certain pharmaceutical compositions intended to help prevent some forms of cancer. *See* filing 1-1 at 3. The original application for the patent, Patent Application No. 10/940,600 (Application 600), was submitted by Cavalieri and Rogan. Filing 1 at 2; filing 23-1 at 1; filing 23-2 at 1. In August 2008, Cavalieri and Rogan assigned Application 600 to the plaintiff. Filing 1 at 2; filing 23-1 at 1; filing 23-2 at 1–2.

The defendant, EQ Biosciences, Inc., is a Nevada corporation. Filing 22 at 1; filing 25-4. Its headquarters are in Nevada, and it maintains no property, offices, bank accounts, or corporate records in Nebraska. Filing 15 at 3; filing 16-2 at 2. John Raffanti and Stephen Sankowich, who both live outside Nebraska, are officers of the defendant. Filing 22 at 1; *see*, filing 24-2; filing 24-3. In October 2009, prior to the defendant's incorporation, Raffanti and Sankowich traveled to Nebraska to meet with Rogan, Cavalieri, and one

1

other individual. Filing 22 at 2; filing 23-1 at 2–3; filing 23-2 at 2–3.[1] At the meeting, they discussed "the formation and ownership interests in the entity, EQ Biosciences, Inc." Filing 22 at 2; *see*, filing 23-1 at 2; filing 23-2 at 2. Additionally, the plaintiff has produced evidence that they negotiated the terms of an agreement for the plaintiff to license Application 600 to the defendant. Filing 22 at 2; *see*, filing 23-1 at 3, 63; filing 23-2 at 3. The defendant disputes that negotiations took place. Filing 24 at 3. Rather, the defendant points to Sankowich's affidavit, in which he states, "In October 2009, I traveled to Nebraska for the sole purpose of meeting the members of Prevention, LLC, and learning more about their research. I made the trip because I was interested in learning more about the opportunity to invest in [the compounds covered by Application 600] before agreeing to commit to any business venture." *See*, filing 24 at 3; filing 25-3.

In November 2009, the defendant was incorporated. Filing 25-4 at 1. Cavalieri, Rogan, Raffanti, and Sankowich were all listed as directors in the articles of incorporation. Filing 25-4 at 1–2. On December 17, 2009, the plaintiff and the defendant entered into a license agreement for Application 600. Filing 1 at 2; filing 1-4 at 1. The defendant wired its payment for the license to a Nebraska bank. Filing 22 at 1; filing 23-1 at 3; filing 23-2 at 3. The defendant trademarked the compounds covered by Application 600 as "Prevennia." Filing 1 at 2; *see* filing 1-5.

The plaintiff contends that after the parties entered into the license agreement, Raffanti, acting on the defendant's behalf, "continuously sent correspondence" to Rogan and Cavalieri, requesting various forms of assistance. Filing 22 at 2. For example, Raffanti asked Rogan and Cavalieri to write materials for the defendant's website, review and critique the website, and gather information for and write large portions of an FDA application for Prevennia. Filing 22 at 2–3; filing 23-1 at 3; filing 23-2 at 3.

In August 2010, Rogan and Cavalieri resigned from their positions with the defendant. Filing 22 at 1–2; filing 23-1 at 3; filing 23-2 at 3. The plaintiff alleges that on March 8, 2011, the defendant sent a demand letter to the plaintiff claiming that the plaintiff violated the license agreement. Filing 1 at 4. The defendant sent additional demand letters on September 19, 2013, and June 26, 2015. Filing 1 at 4. The latest of these letters is attached to the complaint. It asserts that after Cavalieri and Rogan resigned from their roles

---

[1] The plaintiff also alleges that Raffanti was previously an agent of another entity, Preventium, LLC, which contracted with the plaintiff to license the compounds covered by Application 600. Filing 22 at 2. The plaintiff alleges that the agreement was cancelled prior to the formation of EQ Biosciences. Filing 22 at 2. However, neither Raffanti nor Preventium, LLC are parties to this case, and therefore the Court will not consider these allegations in its analysis.

with the defendant in 2010, they "ceased assisting EQ Biosciences in marketing and developing Prevennia, despite requirements in the Agreement." Filing 1-6 at 2. The demand letter further states that "by failing to follow through on promises to promote and market the technology, including conducting a human clinical trial, [the plaintiff] is undermining [the defendant's] ability to profit from the Agreement." Filing 1-6 at 3. Additionally, the letter asserts that the plaintiff began working with another company to develop and market products that relied on the technology covered in Application 600, in violation of the license agreement. Filing 1-6 at 2–3. In response to the defendant's implication that the plaintiff was in breach of contract, the plaintiff filed the present action seeking a declaration that they have not violated the license agreement.

## STANDARD OF REVIEW

When jurisdiction is challenged on a pretrial motion to dismiss, the nonmoving party need only make a prima facie showing of jurisdiction. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011); *see Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The evidence is viewed in the light most favorable to the plaintiff. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 592 (8th Cir. 2011). Nonetheless, if the defendant controverts or denies jurisdiction, the plaintiff still carries the burden of proof. *See*, *Fastpath*, 760 F.3d at 820; *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012); *Viasystems*, 646 F.3d at 592; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010); *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008). The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto. *Fastpath*, 760 F.3d at 820; *Dairy Farmers*, 702 F.3d at 475; *Miller*, 528 F.3d at 1090*; Coen v. Coen*, 509 F.3d 900, 904–05 (8th Cir. 2007).

## ANALYSIS
### A. Motion to Dismiss

The defendant moves to dismiss, arguing that this Court lacks personal jurisdiction over it. Filing 14. The plaintiff contends that there is specific personal jurisdiction over the defendant in Nebraska. Filing 22 at 5.

In order to satisfy due process, a defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Pangaea,* 647 F.3d at 745; *see also Dairy Farmers*, 702 F.3d at 477. The fundamental inquiry is whether the defendant has purposefully availed itself of the

benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there. *Viasystems,* 646 F.3d at 594; *see also Dairy Farmers,* 702 F.3d at 477. Purposeful availment is required to ensure that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person. *Stanton v. St. Jude Med., Inc.,* 340 F.3d 690, 693–94 (8th Cir. 2003). Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant itself that create a substantial connection with the forum state. *Id.* at 694.

The minimum contacts necessary for due process may be the basis for either "general" or "specific" jurisdiction. *Dairy Farmers,* 702 F.3d at 475; *Johnson v. Arden,* 614 F.3d 785, 794 (8th Cir. 2010). A court obtains general jurisdiction against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. *Id.* General jurisdiction is not alleged here. Specific jurisdiction over a defendant, on the other hand, is exercised when a state asserts personal jurisdiction over a nonresident defendant that has purposefully availed itself of the privilege of conducting business in the forum in a suit arising out of or related to the defendant's contacts with the forum. *See, Pangaea,* 647 F.3d at 745–46; *Johnson,* 614 F.3d at 794–95. It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Dairy Farmers,* 702 F.3d at 477; *see also Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

And the Eighth Circuit has set forth a five-part test for measuring a defendant's contacts with a forum state: (1) the nature and quality of the contacts with the forum state, (2) the quantity of those contacts, (3) the relationship of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Dairy Farmers,* 702 F.3d at 477; *Wells Dairy,* 607 F.3d at 518. The third factor distinguishes whether the jurisdiction is general or specific. *Johnson,* 614 F.3d at 794. The first three factors are primary factors, and the remaining two are secondary. *Id.* And a court is to look at all the factors in the aggregate and examine the totality of the circumstances in determining personal jurisdiction. *Id.*; *see Dairy Farmers,* 702 F.3d at 477.

When determining if personal jurisdiction exists over a defendant in a contract case, "[a] contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 593 (8th Cir. 2011). Rather, the Court is to evaluate prior

4

negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine whether the defendant purposefully established minimum contacts within the forum. *Id.* at 594 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479 (1985)).

For example, in *St. Jude Medical, Inc. v. Lifecare International, Inc.,* 250 F.3d 587 (8th Cir. 2001), the Eighth Circuit considered various circumstances relating to the contract between the out-of-state defendant and the plaintiff in reaching its determination that the defendant was subject to jurisdiction in Minnesota. It noted that the defendant aggressively pursued a business relationship with the plaintiff, a Minnesota company; that the defendant wrote and telephoned the plaintiff in Minnesota to negotiate the contract; that the products that were the subject of the contract were at one time manufactured in Minnesota; and that the parties "contemplated an ongoing relationship requiring regular communications." *St. Jude,* 250 F.3d at 592. The court also observed that "[e]ven after the contract was established," the defendant continued to communicate with the plaintiff in Minnesota. *Id.* Finally, the court pointed out that the defendant was aware that its actions would have an effect on the plaintiff in Minnesota. *Id.* The court concluded that "[w]hile no one contact . . . may have been enough to satisfy due process, taken in the aggregate, they are sufficient." *Id.* at 593.

And the Eighth Circuit has reached the same conclusion in other cases where an out-of-state defendant purposefully established a substantial or ongoing business relationship with a forum-state resident. *See*, *e.g.*, *Wessels, Arnold & Henderson v. Nat. Med. Waste, Inc.,* 65 F.3d 1427 (8th Cir. 1995) (finding that there was personal jurisdiction over the defendant where defendant had a systematic business relationship with Minnesota resident and numerous mail and telephone contacts); *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383 (8th Cir. 1995) (finding personal jurisdiction where the defendant's agents travelled to the forum state to meet with the plaintiff, and there were continuing communications with the plaintiff in the forum state).

Similarly, here, the defendant purposefully established a substantial business relationship with the plaintiff in Nebraska. To begin with, Raffanti and Sankowich formed the defendant corporation with Cavalieri and Rogan, both Nebraska residents, after meeting with them in Nebraska. *See,* filing 22 at 2; filing 24 at 3. The parties disagree as to whether they formally negotiated terms of the license agreement at the meeting. Filing 22 at 2; filing 24 at 3. However, it is not genuinely disputed that one purpose of the meeting was to explore the possibility that EQ Biosciences would market and distribute the compounds covered by Application 600. *See* filing 24 at 3.

5

The defendant argues that the Nebraska meeting cannot form the basis for personal jurisdiction, because the defendant was not yet incorporated. Filing 24 at 2–3. Thus, according to the defendant, none of the individuals at the meeting could have been acting as the defendant's agents. Filing 24 at 2–3. Contacts for personal jurisdiction are different from a principal's liability for the conduct of its agents. *Wessels,* 65 F.3d at 1433. Nonetheless, the Eighth Circuit has concluded that basic principles of corporate liability are relevant to the analysis. *See id.* For instance, in *Wessels*, a director of the defendant corporation contacted a representative of the plaintiff company to discuss the possibility of the parties entering into an agreement. *Id.* at 1430. As a result of that discussion, the plaintiff and defendant began formal negotiations, and eventually entered into a contract. *Id.* The defendant argued that its director's preliminary discussion with the plaintiff's representative could not form the basis for personal jurisdiction, because the director was acting outside the scope of his agency. *Id.* at 1433. However, the Eighth Circuit concluded that the defendant "accepted and ratified [the director's] efforts whether [the director] officially had the authority to act or not," because it "went forward with negotiations and eventually consummated an agreement for [the plaintiff's] services." *Id.* Thus, the director's discussion with the plaintiff's representative was relevant to—though not dispositive of—the personal jurisdiction analysis. *Id.*

This situation is analogous. It is true that a corporation is not a legal entity until it is incorporated, and cannot have agents until then. *Stolmeier v. Beck,* 441 N.W.2d 888, 891 (Neb. 1989). It can, however, have promoters, whose pre-incorporation activities may later form the basis for corporate liability. *Id.* Similar to an agent acting outside the scope of his authority, a promoter can bind a corporation where the corporation later ratifies or accepts the benefits of his actions. *See id.* In this case, Raffanti and Sankowich were promoters of the defendant: they organized EQ Biosciences together. *See,* filing 22 at 2; filing 25-4. And like the director in *Wessels*, they engaged in some preliminary discussions about the possibility of an agreement between the defendant and the plaintiff. *See* filing 24 at 3. The defendant accepted the benefits of their efforts when, after its incorporation, it conducted formal negotiations, and eventually entered into a licensing agreement with the plaintiff. Accordingly, it is appropriate to consider the Nebraska meeting in analyzing the defendant's contacts with Nebraska.

The defendant entered into the license agreement with the plaintiff—a Nebraska company—for the rights to compounds developed and researched in Nebraska by Nebraska residents. Filing 1 at 1–2. And their relationship continued even after the license agreement was signed: at Raffanti's request, Cavalieri and Rogan wrote materials for the defendant's website, reviewed

and critiqued the defendant's website, and helped author the defendant's FDA application for Prevennia. Filing 22 at 2–3. And although the defendant now takes the position that the license agreement is a "simple cash-for-patent-rights" contract, filing 15 at 3, in the cease-and-desist letter it sent to the plaintiff, it alleged that the plaintiff breached the license agreement because it stopped assisting the defendant in marketing and developing Prevennia, filing 1-6 at 3.

Considered in totality, the defendant's contacts with Nebraska are not random, fortuitous, or attenuated. Rather, the defendant formed a purposeful, substantial, and ongoing connection with Nebraska, such that it should have been on notice it could be haled into court in Nebraska. These contacts with Nebraska form the basis of the present suit for declaratory judgment: the plaintiff seeks a declaration that it has not violated the terms of the license agreement. Additionally, Nebraska has an interest in providing a forum for its residents. And finally, the defendant has not presented a compelling case that litigation would be substantially more inconvenient in Nebraska than it would be in another forum. Accordingly, the Court concludes that personal jurisdiction over the defendant is appropriate, and will not dismiss this case.

### B. Motion to Transfer Venue

The defendant moves in the alternative for the Court to transfer this case to the District of Nevada, under either 28 U.S.C. §§ 1406(a) and 1404(a). Filing 15 at 14, 16. The Court will deny this request.

First, the defendant argues that the Court should transfer this case to the District of Nevada under 28 U.S.C. § 1406(a). Filing 15 at 14. Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Where a corporation is the defendant in a case, venue is proper "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). As explained above, the defendant is subject to personal jurisdiction in Nebraska. Therefore, venue is proper in the District of Nebraska, and the Court may not transfer the case to another district under § 1406(a).

Second, the defendant argues that the Court should transfer this case to the District of Nevada under 28 U.S.C. § 1404(a). Filing 15 at 16. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A court must consider the

7

following factors in deciding a motion to transfer: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). However, "courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.*

The defendant argues that the District of Nevada is a more convenient forum than the District of Nebraska, because its headquarters are in Nevada, and because many of the documents and some of the witnesses necessary to the lawsuit are in Nevada. Filing 15 at 17. However, the plaintiff points out that its own headquarters are in Nebraska, and that many witnesses and documents are in Nebraska as well. Filing 22 at 16–17. As such, the Court finds that Nevada is not substantially more convenient than Nebraska for the parties and witnesses.

Additionally, the defendant argues that the interests of justice are in favor of transfer because the plaintiff is suing for a declaratory judgment that it has not violated the license agreement as the defendant alleged in its cease-and-desist letters. Filing 15 at 18. The defendant argues that "if Prevention believes there is no merit to EQ's claims, it should have no fear or apprehension of a suit filed against it by EQ in another forum." Filing 15 at 18. But by that logic, a plaintiff's choice of forum should be respected only when the plaintiff believes its case may be weak. Such a conclusion would be peculiar. The Court can find no support in the law for the defendant's "What are you, chicken?" theory of venue. Accordingly, the Court finds that neither the convenience of the parties and witnesses, nor the interests of justice, support transferring this case to the District of Nevada.

IT IS ORDERED:

1. The defendant's motion to dismiss plaintiff's complaint for declaratory judgment or, in the alternative, transfer venue (filing 14) is denied.

2. This matter is referred to the Magistrate Judge for case progression.

Dated this 27th day of May, 2016.

BY THE COURT:

_____
John M. Gerrard
United States District Judge